UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **THE PERFECT COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-7642** |
| **ESSEX INSURANCE COMPANY** | **SECTION: "S" (1)** |

**ORDER AND REASONS**

**IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment (Doc. #77) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion *in Limine* to Limit Testimony of Richard Murphy and/or P.M. McEnry and Use of Murphy Appraisal (Doc. #78) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion *in Limine* to Exclude Expert Report or Testimony of Eric Rigby (Doc. #79) is **DENIED**.

**BACKGROUND**

Plaintiff, The Perfect Company, owned a commercial building located at 3300 Canal Street, New Orleans, Louisiana, 70119. On August 29, 2005, the building sustained damage as a result of Hurricane Katrina. At the time of the storm, plaintiff had a business owners insurance policy issued by defendant, Essex Insurance Company ("Essex"). Plaintiff filed a claim with Essex, and Essex

began the adjustment process. Plaintiff filed suit against Essex on August 28, 2007, alleging that Essex failed to reimburse plaintiff for the wind damage to the property, and that Essex's failure to pay was in bad faith. Essex filed an interpleader counterclaim against the holder of the mortgage on the property, Regions Bank ("Regions"), because Regions was a loss payee on the insurance policy and may have a claim against Essex for the loss.

Essex has filed a motion for partial summary judgment arguing that there is no genuine issue of material fact that it did not act in bad faith. Essex also filed two motions *in limine* seeking to limit or exclude the testimony of some of plaintiff's witnesses and the use of one of plaintiff's exhibits.

## ANALYSIS

**A.     Essex's Motion for Partial Summary Judgment (Doc. #77)**

**1.     Summary Judgment Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only

point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

## 2. Essex's Alleged Bad Faith

Essex seek a partial summary judgment dismissing plaintiff's bad faith claims on the grounds that it did not act in an arbitrary and/or capricious manner and accordingly, that plaintiff is not entitled to bad faith damages under La. Rev. Stat. 22:1220 and 22:658.[1]

As the United States Court of Appeals for the Fifth Circuit noted in *Dickerson v. Lexington Insurance Co.*, 556 F.3d 290, 297 (5th Cir. 2009) (citations, quotes and footnotes omitted; emphasis in original):

> Under § 22:1220, an insurer owes to its policyholders a duty of good faith in settling claims. Breach of the duty exposes an insurer to liability for damages via discretionary penalties, and attorney's fees via § 22:658. Among the enumerated beaches of § 22:1220's duty of good faith is failure to pay a claim within 60 days following receipt of satisfactory proof of loss *if* that failure is arbitrary, capricious, or without probable cause. In contrast, § 22:658 subjects the insurer to penalties and attorneys' fees for its arbitrary and capricious failure to pay a claim within 30 days. A plaintiff may be awarded penalties under only one of the two provisions, §§22:1220 and 22:658, whichever amount is greater. He may, however, seek attorneys' fees under § 22:658 while seeking damages and penalties under § 22:1220.
>
> A plaintiff has the burden of proving that his insurer (1) received satisfactory proof of loss, (2) failed to pay within the required time, and (3) acted in an arbitrary and capricious manner. Arbitrary and capricious has virtually the same meaning under §

---

[1] On January 1, 2009, Louisiana Revised Statutes §§ 22:658 and 22:1220 were renumbered sections 22:1892 and 22:1913, respectively. Because plaintiffs' allegations and the majority of the case law interpreting the statutes reference the former statute numbers, for ease of reference, the court will use the former numbers herein.

3

> 22:1220 as it does under § 22:658; courts interpret the phrase as synonymous with vexatious. [V]exatious refusal to pay means unjustified, without reasonable or probable cause or excuse. An insurer does not act arbitrarily and capriciously, however, when it withholds payment based on a genuine (good faith) dispute about the amount of a loss or the applicability of coverage.

Whether an insurer acted in good faith is a factual, not legal, determination. Id. at 300.

As the Supreme Court of Louisiana recently stated:

> [I]t is well settled that a satisfactory proof of loss is only that which is sufficient to fully apprise the insurer of the insured's claims. In addition, with regard to the form of a proof of loss, this court has stated that proof of loss is a flexible requirement to advise an insurer of the facts of the claim, and that it need not be in any formal style. As long as the insurer receives sufficient information to act on the claim, the manner in which it obtains the information is immaterial.

Louisiana Bag Co. v. Audubon Indem. Co., 999 So. 2d 1104, 1119 (La. 2008)(quotes and citations omitted). Whether, and when, an insurer has a satisfactory proof of loss is also a factual determination. See Boudreaux v. State Farm Mur. Auto. Ins. Co., 896 So.2d 230, 236 (La. Ct. App. 2005). An insurer's own inspection of the damaged property can qualify as a proof of loss. See Mamou Farm Servs., Inc. v. Hudson Ins. Co., 488 So.2d 259, 264-65 (La. Ct. App. 1986)(where building was total loss, insurer had satisfactory proof of loss as of the date it inspected the building); see also Paul v. Nat. Am. Ins. Co., 361 So.2d 1281, 1284 (La. Ct. App. 1978).

Plaintiff reported the loss to Essex on September 29, 2005. Essex's appointed adjustor inspected plaintiff's property in October and November 2005. Plaintiff's representative, Sherie Conrad ("Conrad"), claims that in November 2005, the adjustor said that he would have someone call her in a few days about repairing the roof. After three weeks without any contact, Conrad

4

obtained estimates for replacing the roof. On December 4, 2005, Conrad's roofing contractor faxed an estimate to the adjustor, and the adjustor told Conrad that he would advance $50,000 to plaintiff. Conrad met with the adjustor on January 17, 2006, and he told her that there was an internal problem that was preventing plaintiff from receiving the $50,000 advance. On February 14, 2006, the advance was sent to Conrad, and a new adjustor was assigned to the claim. The new adjustor contacted Conrad to arrange an inspection. Conrad was out of town from February 14, 2006 to July 15, 2006, and would not permit the inspection without her being present. The inspection was completed on August 3, 2006. On September 5, 3006, Essex received the adjustor's report which estimated that the total wind damage to the building was $430,711.73. Essex sent plaintiff $370,711.73 (the $430,711.73 less the $10,000 deductible and $50,000 advance) on September 18, 2006.

Essex argues that it was not in bad faith because it made payment within 30 days of receiving the adjustor's comprehensive report. Plaintiff contends that Essex had sufficient proof of loss when its adjustor visited the property in October and November 2005, and that Essex was in bad faith when it delayed payments thereafter.

As the United States Court of Appeals for the Fifth Circuit has instructed, whether the insurer acted in good faith is a factual determination, and hinges on when the insurer received satisfactory proof of loss; whether the insurer failed to pay within the required time; and whether the insurer acted in an arbitrary and capricious manner in that the insurer's failure to pay was unjustified, without reasonable or probable cause or excuse. Plaintiff's evidence raises questions of material fact

5

as to the timing and sufficiency of proof of loss in Essex's possession, and as to whether Essex acted in good faith in delaying payment.

The court finds that questions of material fact preclude summary judgment as to whether Essex acted in bad faith under §§ 22: 1220 and 658, and the motion for partial summary (Doc. #77) is DENIED.

**B.      Essex's Motion *in Limine* to Limit Testimony of Richard Murphy and/or P.M. McEnry and Use of Murphy Appraisal (Doc. #78)**

Richard Murphy ("Murphy") and P.M. McEnry ("McEnry") are certified real estate appraisers. On March 20, 2004, they issued an appraisal of plaintiff's property. The report states that the "current market value" of the property in fee simple interest was $1,500,000. The report includes detailed descriptions of the property, drawings of the floor plan, and photographs of the interior and exterior of the building. The report also includes an analysis of the value of the property based on the sales prices of properties in the area.

Regions listed Murphy and McEnry on its witness list, and listed the March 20, 2004, appraisal on its exhibit list. Essex seeks to limit Murphy's and McEnry's testimony and the use of the appraisal to the extent that Regions submits it as evidence of the replacement cost value or the actual cash value of the property. The policy provides coverage for the replacement cost value of the building, which is defined as actual cash value without deduction for depreciation. Essex contends that the "fair market value" is not relevant to determining the "replacement cost value" or the "actual cash value" of the building. Regions contends that the testimony and exhibit are relevant

6

to determining the replacement cost value because they demonstrate the condition of the property before the loss.

Rule 402 of the Federal Rules of Evidence provides that "all relevant evidence is admissible." Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without that evidence. FED. R. EVID. 401.

"Actual cash value" is defined as the replacement cost less depreciation. See BLACK'S LAW DICTIONARY (7th ed. 1999). In Bradley v. Allstate Ins. Co., 606 F.3d 215, 227 (5th Cir. 2010), the United States Court of Appeals for the Fifth Circuit explained that "actual cash value" "is determined by calculating the cost of duplicating the damaged property with new materials of the like kind and quality, less allowance for physical deterioration and depreciation."

Here, the policy provides coverage for the replacement cost value, which is the cost of duplicating the damaged property with new materials of like kind and quality, without any deductions for depreciation. Murphy and McEnry appraised the property about eighteen months before the loss, and their appraisal report contains detailed descriptions and photographs of the property. Their testimony and March 20, 2004, appraisal are relevant in determining the pre-loss condition of the building. Therefore, Essex's motion *in limine* to Limit Testimony of Richard Murphy and/or P.M. McEnry and Use of Murphy Appraisal is DENIED.

**C.  Essex's Motion *in Limine* to Exclude Expert Report and Testimony of Eric Rigby (Doc. #79)**

Essex seeks to exclude the report and testimony of plaintiff's expert accountant, Eric Rigby ("Rigby"). Essex argues that Rigby's testimony will not assist the trier of fact because his report does not contain the proper calculations.[2] Rigby calculated three categories of plaintiff's alleged lost profits: (1) the profits plaintiff would have earned for the estimated date of completion of the building's restoration (January 1, 2007) to the date of the report (November 9, 2009); (2) the profits plaintiff would have earned from the day after the report deadline (November 10, 2009) to the end of Conrad's estimated life expectancy (December 4, 2037); and, (3) future lost equity on the sale of the building upon Conrad's death in 2037. Essex contends that plaintiff is claiming business destruction as special damages for Essex's alleged bad faith, and that lost profits is not the proper measure of damages for a business destruction claim. Plaintiff contends that Rigby's report is relevant because it is claiming lost profits as a result of the destruction of the property, not business destruction, as special damages.

**1.   Legal Standard**

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence. Gen. Elec. Co. v. Joiner, 118 S.Ct. 512, 515 (1997). Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue,

---

[2] Essex does not challenge Rigby's qualifications as a Certified Public Accountant ("CPA"). Rigby has been licensed as a CPA in Louisiana since 1989, and has been retained as an expert wtiness in numerous matters.

> a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if 1) the testimony is based upon sufficient facts or data, 2) the testimony is the product of reliable principles and methods, and 3) the witness has applied the principles and methods reliably to the facts of the case.

In <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 113 S.Ct. 2786, 2795 (1993), the Supreme Court held that Rule 702 requires the district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." To perform its gatekeeping function, the court must first determine whether the proffered expert testimony is reliable. The party offering the testimony bares the burden of establishing its reliability by a preponderance of the evidence. <u>See</u> <u>Moore v. Ashland Chem. Inc.</u>, 151 F.3d 269, 276 (5th Cir. 1998). The reliability inquiry requires the court to assess whether the reasoning or methodology underlying the expert's testimony is valid. <u>See</u> <u>Daubert</u>, 113 S.Ct. at 2796. The goal is to exclude expert testimony that is based merely on subjective belief or unsupported speculation. <u>See</u> <u>id.</u> at 2795. Next, the court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence, i.e. whether it is relevant. <u>See</u> <u>id.</u> at 2795-96.

Rule 702 also requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact. <u>Rushing v. Kansas City S. Ry. Co.</u>, 185 F.3d 496 (5th Cir. 1999). A witness qualified as an expert is not strictly confined to his area or practice, but may testify regarding related applications, rather "a lack of specialization does not

affect the admissibility of the opinion, but only its weight." Wright v. John Deere Co., 935 F.2d 1090, 1100 (10th Cir. 1991).

### 2. Plaintiff's Alleged Special Damages

"[S]ection 22:1220 allows recovery of any general and special damages resulting from the breach of an insurer's duty of good faith and fair dealing, and, in addition, the award of a penalty up to twice the amount of damages." Marketfare Annunciation, LLC v. United Fire and Cas., 2006 WL 3759565, at *5 (E.D. La. 12/19/06). "The damages that are recoverable under La.R.S. 22:1220(C) include any damages, foreseeable or not, that are a direct consequence of [the insurer's] breach. Felham Enterprises (Cayman) Ltd. v. Certain Underwriters at Lloyds, 2005 WL 2050284 (E.D.La. 8/2/05). The jurisprudence instructs that plaintiff is entitled to recover a penalty under La. Rev. Stat. 22:658(B) or 22:1220 (C), whichever is greater, but a penalty cannot be recovered under both statutes. See Calogero v. Safeway Ins. Co. of La., 753 So.2d 170, 174 (La. 2000). Whether plaintiff has suffered damages as a result of the insurer's breach is a factual determination for the trier of fact. See Dixon v. First Premium Ins. Group, 934 So.2d 134, 144 (La. Ct. App. 2006).

Plaintiff alleges that it is entitled to lost profits as special damages for Essex's breach of its duty of good faith and fair dealing. Essex argues that lost profits is not the proper valuation for plaintiff's special damages claim because plaintiff's business was destroyed, not interrupted.

In Achee v. Nat'l Tea Co., 686 S.2d 121, 124 (La. Ct. App.), the Court of Appeals of Louisiana for the First Circuit defined "business destruction" as "a business that is, in effect, put out of existence." The proper measure of damages for a business destruction claim is the loss of value of the business at the time of the destruction. Id. at 125. In contrast, a "business interruption is a

10

temporary cessation or impairment of the operations of an established business [after which] the business returns to some semblance of what it was before the interference of its operations." Id. at 124 (citations omitted).

Plaintiff's claim is properly described as a business destruction. The building at issue in this litigation was the only property owned by plaintiff. Plaintiff acknowledges that the bank has foreclosed upon the property, and that plaintiff will not be able to return its business to some semblance of what it was prior to Hurricane Katrina. Thus, there was no "temporary cessation or impairment of the operations" of plaintiff's business. Rather, plaintiff's business has been "in effect, put out of existence" because plaintiff has no other rental properties, and can never resume its business. Further, Rigby's report calculates damages through the end of the life of plaintiff's principal owner, Conrad. This calculation is inconsistent with a claim for a business interruption because it is assuming that the business will never return.

Although Rigby's report calculate's lost profits, it is relevant to determining the value of the business on the date of the loss. In Achee, 686 S.2d at 125, the court recognized that:

> Business valuations methods are not exact and are basically guides
> for buyers and sellers to use in an effort to determine what would be
> the fair market value for a given business. Given the dynamics of
> businesses and business practices, and factoring in circumstance that
> may be unique to the parties, an inflexible formula for determining
> loss of value would be impracticable.

Rigby's report and testimony are admissible to the extent that they can aid the trier of fact in determining the value of plaintiff's business on the date of the destruction, if it decides that plaintiff

is entitled to special damages for Essex's alleged bad faith. Therefore, Essex's motion *in limine* to exclude the report and testimony of Rigby is DENIED.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment (Doc. #77) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion *in Limine* to Limit Testimony of Richard Murphy and/or P.M. McEnry and Use of Murphy Appraisal (Doc. #78) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion *in Limine* to Exclude Expert Report or Testimony of Eric Rigby (Doc. #79) is **DENIED**.

New Orleans, Louisiana, this __15th__ day of July, 2010.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**